```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

                                      :
INTERNATIONAL STRATEGIES GROUP,
LTD.,                                 :

       Plaintiff,                     :

V.                                    :    CASE NO. 3:04-CV-696 (RNC)

PETER S. NESS,                        :

       Defendant.                     :
```

## RULING AND ORDER

Plaintiff International Strategies Group, Ltd. ("ISG") brings this diversity case against defendant Peter Ness. ISG's claims arise from the loss of approximately $4 million, which it invested with Corporation of the BankHouse ("COB"), a Boston-based investment firm. Ness, a corporate director and manager of COB, dealt with ISG regarding the investment. ISG claims that he is liable under state law for breach of fiduciary duty and misrepresentation. Defendant has moved to dismiss the action on the ground that it is barred by the statute of limitations. I agree that the action is time-barred and therefore grant the motion to dismiss.

## Facts

The amended complaint alleges the following facts, which must be accepted as true for the purpose of ruling on the present motion. In April 1998, ISG, a Hong-Kong based company, invested $4 million with COB in reliance on COB's assurances that the

1

investment would not be depleted and would earn substantial profits.  Not long after ISG provided the funds to COB, COB made a number of unauthorized transfers of the funds to outside bank accounts in violation of the non-depletion agreement.  COB then engaged in a Ponzi scheme, using funds from new investors to cover the depletion of funds provided by recent investors.  The scheme involved a number of other individuals and entities not involved in this suit.

According to the amended complaint, Ness played a key role in executing the fraudulent scheme and placating ISG and other investors.  In October 1998, when ISG expected to recover its initial investment of approximately $4 million plus a promised profit of $2 million, Ness helped convince ISG to authorize COB to transfer the entire amount to an entity called Swan Trust (Am. Compl. ¶ 25).[1]  ISG agreed on the conditions that the funds would not be depleted and any account activity would require two signatures. (Opp. Of. Pl. to Def's. Mot. to Dis. at 5).  Based on representations by COB and Ness, including a phone call from Ness projecting significant profits, ISG believed these conditions were being met until June 2000, when ISG discovered that COB had transferred the money to a third party in violation of the conditions of the agreement. (Am. Compl. ¶¶ 29-32; Pl.'s Opp. to

---

[1] Elsewhere in its filings, plaintiff states that it had no knowledge of Swan Trust and did not authorize the transfer.  Opp. Of. Pl. to Def's. Mot. to Dis. at 6.

2

Mot. to Dis. at 7).[2]

COB tried to placate ISG by representing that COB itself was the victim of fraud. COB was aided in this effort by Ness and others, who communicated with ISG at the time. Though ISG knew it had a cause of action against COB (Pl.'s Opp. to Mot. to Dis. at 10), it was persuaded by Ness and others that forbearance was the best course of action. (Pl.'s Opp. to Mot. to Dis. at 10.)

On August 21, 2001, as part of COB's effort to keep ISG from filing suit, Ness told ISG that COB was proceeding with the first steps of litigation. Ness's representation was not true.

In October or November 2001, ISG retained counsel of its own. In March 2002, it filed suit against COB in the United States District Court for the District of Massachusetts.[3] During discovery in the case against COB, ISG learned the full extent of Ness's involvement in the fraudulent scheme. ISG then commenced

---

[2] It is unclear from the filings exactly when ISG learned that the agreement had been violated and Ness had been misrepresenting facts about the investment. Plaintiff's brief in opposition to the motion to dismiss indicates that by March 1999, ISG knew the funds were no longer in COB's control. (Pl.'s Opp. to Def's. Mot. to Dis. at 7). The complaint notes that in June 2000, COB solicited a power of attorney from ISG to authorize a lawyer for COB to act on behalf of ISG to recover the funds that had been taken. (Am. Compl. ¶ 36). Because accepting the later date does not affect the resolution of the motion to dismiss, the Court assumes ISG did not discover the transfers until June 2000.

[3] International Strategies Group, Ltd., v. Corporation of the BankHouse, Inc., et al., No. 02-10532-RWZ. ISG was awarded a $10 million judgment, which it has been unable to collect.

3

the present action.[4]

Discussion

Defendant moves to dismiss based on the three-year limitation period provided by Conn. Gen. Stat. § 52-577.[5] Plaintiff does not dispute that this statute applies to the claims in the amended complaint. The statute is an "occurrence" statute, meaning that the three-year period it provides for filing an action begins to run at the moment the act or omission complained of occurs. See Bello v. Barden Corp., 180 F. Supp. 2d 300, 310 (D. Conn. 2002). Because the complaint in this action was filed in April 2004, the statute bars claims based on acts or omissions occurring before April 2001.

Plaintiff contends that the defendant is equitably estopped from raising a statute of limitations defense, or, alternatively, that the statute was tolled under the continuing course of conduct doctrine until August 2001. Defendant contends that plaintiff's reliance on these doctrines is unavailing. I agree.

One who claims equitable estoppel "must show that he has

---

[4]ISG has filed two other related suits. In International Strategies Group, Ltd., v. Stephen Heffernan, No. 04-10863-RWZ (D. Mass.), it sued another COB director. In International Strategies Group, Ltd. v. Greenberg Traurig, LLP, Civil Action No. 04-12000-RWZ (D. Mass.), it sued outside counsel for COB. Both actions have been dismissed as time-barred.

[5]"No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat § 52-577.

exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." Connecticut Nat'l Bank v. Voog, 233 Conn. 352, 367 (1995) (internal citation omitted). In this case, it is undisputed that ISG knew its funds had been misappropriated in violation of the non-depletion agreement no later than June 2000. ISG states that it did not undertake its own investigation because it believed the defendant and COB were working to recover the funds. By its own admission, however, ISG knew or should have known that the defendant had made a number of material misrepresentations about the investment, including that ISG's funds had not been transferred or depleted and that profits were being earned. By June 2000, ISG knew these statements were not true. Once ISG knew that Ness had made these material misrepresentations, due diligence required it to independently verify Ness's further representations concerning the investment. Had ISG exercised due diligence, it would have learned that Ness and COB were continuing to mislead it regarding material facts. ISG is a sophisticated party. Because it failed to exercise due diligence, it cannot now invoke the doctrine of equitable estoppel.

The continuing course of conduct doctrine "has no application after the plaintiff has discovered the harm." Rosato

5

v. Mascardo, 82 Conn. App. 396, 405 (2004); see also Rivera v. Fairbank Management Properties, Inc., 45 Conn. Supp. 154, 159 (collecting cases).[6]  Assuming the continuing course of conduct doctrine could apply on the facts alleged, it would not toll the limitation period beyond June 2000, when plaintiff became aware that its funds had been misappropriated in violation of the non-depletion agreement.

IV. Conclusion

Accordingly, defendant's motion to dismiss [Doc. # 21] is hereby granted.  The Clerk will enter judgment dismissing the action as time-barred.

So ordered this 30th day of March 2010.

/s/RNC<br>Robert N. Chatigny<br>United States District Judge

---

[6]  The only exception is when there is continuing harm. In that circumstance, the defendant may be liable for damages "starting from the date calculated by subtracting the limitations period from the date of filing." City of West Haven v. Commercial Union Insurance Company, 894 F.2d 540, 546 (2d Cir. 1990).  Under that rule, even if the continuing course of conduct doctrine did toll the limitation period until August 2001, as plaintiff contends, plaintiff still would not be able to recover because COB misappropriated its funds in 1999.